LYNCH, Chief Judge,
concurring.
I concur in the carefully reasoned panel opinion and wish to say a few words. Under the aggravated identity theft statute, 18 U.S.C. § 1028A, Congress created a crime which has the consequence that the convicted defendant is given a mandatory consecutive sentence of two years in general, under § 1028A(a)(l), and five years in terrorism offenses, under § 1028A(a)(2), in addition to the sentence for the underlying felony. The statute itself shows how serious Congress was about increasing the mandatory sentence: section 1028A(b) expressly cuts off most of the mechanisms through which such a sentence could be reduced.
Congress was responding to the drastic upsurge in what are called identity theft crimes and which encompass a variety of situations. The identity fraud statistics considered by Congress are staggering. See, e.g., H.R.Rep. No. 108-528, at 4, as reprinted in 2004 U.S.C.C.A.N. 779, 780 (“[T]he loss to businesses and financial institutions from identity theft [is estimated] to be $47.6 billion. The costs to individual consumers are estimated to be approximately $5.0 billion.”); id. at 25 *63 (statement of Rep. Coble) (“In 2002, the FTC received 161,819 victim complaints of compromised personal information.... [These] victims have a difficult time consuming [sic] an expensive task of repairing a damaged credit history as well as their respective reputations.”); id. at 35 (statement of Rep. Scott) (“[T]he FTC reports [consumer identity theft] bilked almost 30 million Americans out of approximately $50 billion over the last 5 years, with about $5 billion of that out-of-pocket, unrecovered losses to consumers.”); id. at 44 (statement of Rep. Jackson Lee) (“Identity theft victims now spend an average of 600 hours — often over a period of years — recovering from the crime. Being a victim costs an average of $1,400 in out-of-pocket expenses.... ”).
I view this appeal as presenting two basic queries. The first is whether Congress intended this identify theft offense, mandating an enhanced sentence, to apply where the defendant knew full well she was using, without lawful authority, an identification which was not her own during a felony (here bank fraud under 18 U.S.C. § 1344), but did not know beyond a reasonable doubt that the identification was that of another person. The second question is, if that was Congress’s likely intent, whether Congress expressed that intent in the text of the statute in terms sufficiently clear that there is no occasion to resort to the rule of lenity, which operates in defendant’s favor.
A conviction under the statute, and the consequent mandatory sentence enhancement, requires a jury (or trier of fact) to find beyond a reasonable doubt that all of the statutory requirements have been met. Cf. Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). And so the issue has been framed as one of whether the jury was correctly instructed that the knowledge needed was that the defendant “knowingly used a means of identification without lawful authority,” United States v. Godin, 489 F.Supp.2d 118, 120 (D.Me.2007), or whether the knowledge needed also extended to the fact that the identification used was that of another person.
The circuit courts are divided on the issue. Three circuits and. the district judge here would not extend the knowledge requirement to the fact that the means of identification used was that of an another person. United States v. Mendoza-Gonzalez, 520 F.3d 912, 915 (8th Cir. 2008); United States v. Hurtado, 508 F.3d 603, 607 (11th Cir.2007) cert. denied, — U.S. -, 128 S.Ct. 2903,— L.Ed.2d -(2008); United States v. Montejo, 442 F.3d 213, 214 (4th Cir.), cert. denied, — U.S.-, 127 S.Ct. 366, 166 L.Ed.2d 138 (2006).
The District of Columbia Circuit, United States v. Villanueva-Sotelo, 515 F.3d 1234, 1236 (D.C.Cir.2008), and now the panel here have concluded to the contrary: that the jury must be charged that the defendant knew the means of identification used was that of another person.
■It would be beneficial if the Supreme Court resolved the mens rea issue. The circuit conflict is certainly ripe. And there are a large number of district court opinions on the issue. The issue is important and affects a large number of cases and a large number of defendants. For each of those defendants, an additional mandatory two-year sentence makes a great deal of difference.
A large number of cases are involved. The range of underlying felonies that can trigger this offense is broad. To give but a few examples of the scope of the issue, this offense can be charged when an unlawful means of identification is used in the course of Social Security fraud, 18 U.S.C. § 1028A(c)(ll), passport fraud, id. *64 § 1028A(c)(7), theft of public property, id. § 1028A(c)(l), fraud in the acquisition of a firearm, id. § 1028A(c)(3), citizenship fraud, id. § 1028A(c)(2), and other crimes.
I agree with the majority opinion that the terms of § 1028A(a)(l), taken alone, are ambiguous.[10] Based on my reading, the indications in the legislative history tend to support the district court’s interpretation that the term “knowingly” does not extend as far as knowledge that the means of identification used is that of another person. In the legislative history, there are references both to thefts of the identities of other persons and to the use of false identifications, including (as here) use of Social Security numbers. See H.R.Rep. No. 108-528, at 5-6, 2004 U.S.C.C.A.N. 779, 780. The discussion did not distinguish between the two, nor did it focus on the mens rea issue which concerns us. The opponents of the legislation based their opposition on the mandatory nature of the sentences, and not on differing views of the mens rea requirement. See 150 Cong. Rec. H4811 (statement of Rep. Scott).
It would be quite logical for Congress to impose additional punishment when the means of a crime involves the use of a false identity, both when the defendant knows the identification is “of another person” and when the defendant does not. I doubt that Congress would have intended, had it explicitly focused on the issue, to create an escape clause from the additional punishment for felons who could not be shown to have known the identification they used was that “of another person.” It is not a stretch to conclude, as the district court did, that the purpose of the statute encompassed the use of the Social Security number of an innocent Maine resident whether the defendant knew the Social Security number was that person’s or not. Godin, 489 F.Supp.2d at 121.
Still, the text provides support for the other view. In favor of defendant’s reading is the distinction in language between the general offense in § 1028A(a)(l) and the terrorism offense in § 1028A(a)(2), which could be read as explicitly covering knowing use of both “a means of identification of another person” and “a false identification document.” Congress could easily have used the broader language of subsection (a)(2) in subsection (a)(1), but did not.
In this situation, guidance may come from the Supreme Court’s latest opinion applying the rule of lenity, United States v. Santos, — U.S. -, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008). The plurality opinion stated that there was “no more reason to think” that a key term in the statute that Congress had not defined meant one thing over another. Id. at 2025. That is very close to this case. Ultimately, Justice Stevens’s opinion provided the necessary vote for a majority and weighed the rule of lenity in the determination of the outcome where he believed Congress had left the term undefined but he considered that Congress could not have intended a particular result. Id. at 2033 (Stevens, J., concurring in the judgment). So too, here.
*65 In the end, the Supreme Court may resolve this important question of interpretation of the present statute. Alternatively, Congress may wish to clarify in new legislation the scope of the enhanced penalties.

. There are several other ambiguities which also may affect the mens rea requirement. One is what is meant by "another person.” Presumably, the statute includes past persons as well as living persons; it is also possible it was meant to include identification such as Social Security numbers held in reserve for future persons.
In addition, the statute is not clear whether the means of identification must belong to another person, as the district court interpreted it, or whether the means of identification merely must be based on the identity of another person. Those issues are not before us. There is no question here that the Social Security number here belonged to the Maine resident.